UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

WILLIE N. MATHIS,

      Petitioner,

v.                                        Case No.  1:15cv130/WTH/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254, with attachments.  (Doc. 13).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 31).  Petitioner replied with additional attachments.  (Doc. 33).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the

pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the amended petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY[1]

On November 15, 2010, petitioner was charged with Escape by Work Release in Alachua County Circuit Court Case No. 10-CF-3408. (Doc. 31, Ex. A1, p. 2).[2] The information alleged that on or about August 19, 2010, petitioner escaped from the Department of Corrections' Santa Fe Work Camp in violation of Sections 944.40 and 951.24(4), Florida Statutes. (Ex. A1, p. 2). The information was later amended to change the second statutory citation from Section 951.24(4), which applies to the confinement and escape of county prisoners, to Section 945.091(4), which applies to the confinement and escape of state prisoners. (Ex. A2, p. 234 (amended information); Ex. A7, pp. 168-169 (prosecutor's explanation of amendment)). The information was amended again on February 3, 2012, by interlineation, to correct the name of the facility from which petitioner escaped from Santa Fe Work Camp to

---

[1] The court provides a very condensed procedural history. A more extensive history of petitioner's pre-and post-judgment proceedings and filings is provided in respondent's answer (doc. 31, pp. 2-29) and, as relevant, in the court's discussion of particular claims.

[2] References to exhibits are to those provided at Doc. 31, unless otherwise noted. If a page of an exhibit has more than one page number, the court cites the number appearing at the bottom center of the page.

Santa Fe Work Release Center.  (Ex. A10, pp. 398-409 (transcript memorializing amendment)).  After an initial mistrial, petitioner went to trial on February 24, 2012, was convicted as charged upon jury verdict, and was sentenced to 10 years in prison. (Ex. A2, pp. 331-37 (verdict and judgment); Ex. A5 (trial transcript)).  The Florida First District Court of Appeal (First DCA) affirmed the judgment on December 16, 2013, per curiam and without written opinion.  *Mathis v. State*, 128 So. 3d 801 (Fla. 1st DCA 2013) (Table) (copy at Ex. J).

On November 27, 2013, petitioner filed a *pro se* petition for writ of habeas corpus in the Wakulla County Circuit Court.  (Ex. M1).  The Wakulla County Circuit Court determined that it was not the proper jurisdiction because "the issues raised in his petition appear to challenge the validity of his conviction in Alachua County case no. 01-2010-CF-3408."  (Ex. M2).  The petition was transferred to the Alachua County Circuit Court, where it was eventually filed in petitioner's criminal case and treated as a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. M2; Ex. M3; Ex. M4).  The Alachua County Circuit Court summarily denied the Rule 3.850 motion on January 10, 2014, without evidentiary hearing.  (Ex. M5).  Petitioner did not appeal.

On October 26, 2014, petitioner filed a *pro se* "'Emergency' Petition for Writ of Habeas Corpus" in the Alachua County Circuit Court. (Ex. T1). Noting that the petition "mounts a collateral attack to his judgment and sentence" and, therefore, "relief is appropriately sought by motion for post-conviction relief", the circuit court ordered the clerk to file the petition in petitioner's criminal case (10-CF-3408) and treat it "as a motion for post-conviction relief." (Ex. T2). Petitioner filed a *pro se* "Amended Second Motion for Post-Conviction Relief With Incorporated Memorandum of Law". (Ex. T3). The state circuit court summarily denied the amended second Rule 3.850 motion on November 26, 2014, without evidentiary hearing. (Ex. T4). The First DCA affirmed, per curiam and without written opinion. *Mathis v. State*, 162 So. 3d 991 (Fla. 1st DCA 2015) (Table) (copy at Ex. T8). The mandate issued May 4, 2015. (Ex. T8).

On May 31, 2015, petitioner filed a *pro se* petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate (direct appeal) counsel. (Ex. S1). The First DCA per curiam denied the petition "on the merits" without explanation. *Mathis v. State*, 169 So. 3d 185 (Fla. 1st DCA 2015) (copy at Ex. S2). Petitioner's *pro se* motion for rehearing en banc was denied on July 29, 2015. (Ex. S3).

Petitioner filed his federal habeas petition on June 19, 2015, which he later amended.  (Doc. 1, p. 1; Doc. 13).  The petition raises four grounds for relief:  two claims of ineffective assistance of trial counsel, one claim of prosecutorial misconduct, and one claim of ineffective assistance of appellate counsel.  (Doc. 13). Respondent asserts that petitioner is not entitled to relief, because the state court's rejection of his claims was not contrary to or an unreasonable application of clearly established federal law, nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence in the state court record.  (Doc. 31, pp. 37-82).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>  (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

>  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

law," namely, "the governing legal principle or principles set forth by the Supreme

Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538

U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly

established" only when a Supreme Court holding at the time of the state court

decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47,

130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S.

Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly

established Federal law for purposes of § 2254(d)(1) includes only the holdings, as

opposed to the dicta, of this Court's decisions." (internal quotation marks and

citation omitted)).

After identifying the governing legal principle(s), the federal court determines

whether the state court adjudication is contrary to the clearly established Supreme

Court case law. The adjudication is not contrary to Supreme Court precedent merely

because it fails to cite to that precedent. Rather, the adjudication is "contrary" only

if either the reasoning or the result contradicts the relevant Supreme Court cases.

*Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding

th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does

not even require awareness of our cases, so long as neither the reasoning nor the

result of the state-court decision contradicts them.").  Where there is no Supreme

Court precedent on point, the state court's conclusion cannot be contrary to clearly

established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that

counsel was *per se* ineffective in being absent from the courtroom for ten minutes

during testimony concerning other defendants:  "Because none of our cases confront

the specific question presented by this case, the state court's decision could not be

contrary to any holding from this Court." (internal quotation marks and citation

omitted)).  If the state court decision is contrary to clearly established federal law,

the federal habeas court must independently consider the merits of the petitioner's

claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed.

2d 662 (2007).

 If the "contrary to" clause is not satisfied, the federal habeas court next

determines whether the state court "unreasonably applied" the governing legal

principles set forth in the Supreme Court's cases.  The federal court defers to the

state court's reasoning unless the state court's application of the legal principle(s)

was "objectively unreasonable" in light of the record before the state court.

*Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct.

2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme

Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal
> judges are required to afford state courts due respect by overturning
> their decisions only when there could be no reasonable dispute that they
> were wrong.  Federal habeas review thus exists as "a guard against
> extreme malfunctions in the state criminal justice systems, not a
> substitute for ordinary error correction through appeal."  *Harrington,
> supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct.

770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on

the merits in state court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable

determination of the facts" standard is implicated only to the extent the validity of

the state court's ultimate conclusion is premised on unreasonable fact finding.  *See

Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable

application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*,

537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state

court decision based on a factual determination "will not be overturned on factual

grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739 (11th Cir. 2011).  However, the Eleventh Circuit declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner

failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

## DISCUSSION

Petitioner's first two claims are related and are therefore addressed together.

| | |
|---|---|
| Ground One | "Counsel was constitutionally ineffective during 'critical stage' of plea offer negotiation, court proceeding on Oct. 31, 2011." (Doc. 13, p. 5 in ECF). |
| Ground Two | "Counsel was constitutionally ineffective when he chose to 'not convey' State's plea offer before 'Window' expiration period." (Doc. 13, p. 7 in ECF). |

Petitioner claims trial counsel was ineffective for advising him to abandon a defense plea offer of 1 year in the county jail after the State and the trial court

accepted the offer.  (Doc. 13, pp. 5-6 in ECF).  Petitioner also claims trial counsel

was ineffective for failing to convey a prosecution plea offer – 61 months in state

prison – before that offer expired.  (Doc. 13, pp. 7-8 in ECF).  Respondent asserts

that petitioner presented these claims to the state court in his second Rule 3.850

proceeding.  (Doc. 31, pp. 37, 39, 41-42).  Respondent argues that petitioner is not

entitled to relief because the state court's decision was consistent with *Strickland*

and was based on a reasonable determination of the facts.  (Doc. 31, pp. 37-53).

A.    Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984), the Supreme Court set out a two-part inquiry for ineffective assistance of

counsel claims.  The petitioner must show that (1) his counsel's performance was

constitutionally deficient, and (2) the deficient performance prejudiced him.  466

U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below

an objective standard of reasonableness.  Second, petitioner must show that 'there is

a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168,

184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 694).

Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 134 S. Ct. at 17 (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S.

at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

In the context of plea negotiations, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 133, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012). Defendants must also, however, "complete [their] showing of *Strickland* prejudice" by also showing that "if the prosecution had the discretion to cancel [the plea offer] or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. This further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it." *Frye*, 566 U.S. at 148-149 (citations omitted). As the Supreme Court summarized in *Lafler v. Cooper*, 566 U.S. 156, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012):

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

566 U.S. at 164.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The

question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.    Review of State Court's Decision

Petitioner's Grounds One and Two were presented to the state court as a single claim (Ground I) in petitioner's second Rule 3.850 proceeding (Ex. T3, pp. 81-95), and were addressed as such in the circuit court's order of summary denial:

> Defendant alleges that trial counsel was ineffective for failing to advise him to [sic] the State's plea offers of: (1) one year in the county jail; and, (2) 61 months imprisonment in the Department of Corrections. "[T]o establish prejudice, the defendant must allege and prove a reasonable probability, defined as a probability sufficient to undermine confidence in the outcome, that (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Alcorn v. State*, 121 So.3d 419, 422 (Fla. 2013). Here, Defendant's factual claim is conclusively refuted by the record. First, there was never a plea offer from the State in this case for one year in the county jail. That was Defendant's counter-offer which the State rejected. *See* Pretrial Conference (October 31, 2011) Transcript at 11 (lines 7-12); Motion in Limine Hearing (December 12, 2011) Transcript at 27 (lines 13-25). Second, the State's plea offer in this case was always 61 months imprisonment in the Department of Corrections; and, Defendant was notified multiple times that if he rejected the State's plea offer, and proceeded to trial, he would be facing a maximum possible sentence of 15 years imprisonment. *See* Plea Offer Memorandum (dated January 19, 2011); Pretrial Conference (October 31, 2011) Transcript at 15 (lines 14-25) –

> 16 (lines 1-2); Pretrial Conference and Nelson Inquiry (November 30, 2011) Transcript at 3 (lines 6-25) – 4 (lines 1-24); Motion in Limine Hearing (December 12, 2011) Transcript at 24 (lines 1-25) – 25 (lines 1-8), 27 (lines 5-25).  Third, Defendant had no intention of accepting the State's plea offer of 61 months imprisonment.  *Id.*  For these reasons, Defendant fails to show either error by counsel or manifest injustice.  Accordingly, the claim raised is without merit.

(Ex. T4, pp. 130-131) (alterations in original).  The *Alcorn* case adopted the United States Supreme Court's prejudice standard detailed in *Frye*, 566 U.S. at 148-149, and *Lafler*, 566 U.S. at 164.  The First DCA summarily affirmed the denial of postconviction relief.  (Ex. T8).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claims.  *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *cert. granted*, No. 16-6855, 2017 WL 737820 (U.S. Feb. 27, 2017).  Where, as here, "the last adjudication on the merits

provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*." *Wilson*, 834 F.3d at 1235. The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." *Id.* at 102.

Under the *Richter* test, petitioner must establish there was no reasonable basis for the First DCA to affirm the denial of his ineffective assistance claims. In reviewing the reasonableness of the First DCA's decision, this court may, but is not required, to look to the reasoning of the state court below (the state circuit court). The Eleventh Circuit explained in *Wilson*:

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state [appellate] court could have denied relief and our inquiry ends. In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable. But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

834 F.3d at 1239.

The First DCA reasonably could have adopted the state circuit court's factual findings, because the record amply supports them. *See* 28 U.S.C. §§ 2254(d)(2) and (e). The record contains a written plea offer from the State dated January 19, 2011, which provides:

> The [S]tate has no objection if your client pleas to the following:
>
> **ESCAPE**
>
> THIS PLEA OFFER IS BASED UPON NO DEPOSITION BEING TAKEN, UPON SETTING A DEPOSITION I WILL REVOKE THIS OFFER
>
> In exchange, the State and the Defense will recommend the following disposition to the Court:
>
> - **ADJUDICATION OF GUILT**
> - **COURT COST**
> - **61 MONTHS INCARCERATION IN THE DEPARTMENT OF CORRECTIONS CONSECUTIVE TO ANY SENTENCE HE IS PRESENTLY SERVING**
>
> If any part of this plea offer is unacceptable, it will be viewed as a rejection of the whole offer.
>
> Any case announced for trial will be viewed as a rejection of the offer and will terminate any further negotiation.

(Ex. T4, p. 134; *see also* Doc. 13, App. E).

At the October 31, 2011, pretrial conference, the following exchange occurred:

> THE DEFENDANT:  And I have a – I have one more other question, if you don't mind.
>
> THE COURT:  Okay.
>
> THE DEFENDANT:  Can you and I come to agreement –
>
> THE COURT:  No, sir.
>
> THE DEFENDANT:  – about this?
>
> THE COURT:  No, sir.  I cannot enter into any kind of plea, or I can't tell you ahead of time –
>
> THE DEFENDANT:  On the contract –
>
> THE COURT:  No.  Well, it's not ethical for me to say well, if you do this, then I'll do this, or anything like that.  I can't operate that way.  So the only way I can operate is if something is presented to The Court, I listen to both sides and then make the best decision I can.
>
> MR HECHAVARRIA [Prosecutor]:  Well, The Court can be the trier of fact if he chooses –
>
> THE COURT:  Sure.
>
> MR. HECHAVARRIA:  – to waive his right to a jury trial, and –
>
> THE COURT:  But, I'm not going to tell Mr. Mathis ahead of time how I would rule.
>
> . . . .

THE COURT:  Alrighty.  So Mr. Martin [Defense Counsel], you've had a chance to talk with Mr. Mathis?

MR. MARTIN:  Yes, ma'am.  We have.  We spoke about several things.

THE COURT:  All right.

MR. MARTIN:  Although at some point, we did – there was a bit of a breakdown.  But we did – I did glean this much information:  Mr. Mathis had wanted me to convey a plea offer to the State Attorney[']s Office –

THE COURT:  Uh-huh.

MR. MARTIN:  – of one year in the Alachua County Detention Center.  I did relay that plea offer to the State.  The State has declined to accept that plea offer.  And just for purposes of the record, I have, on several occasions, attempted to negotiate with the State, and I think the State's prepared to verify that.

Where we became a little muddled is I believe Mr. Mathis would like to have a trial.  He would like to have it this week.  He does not believe that I am capable of representing him.  And I – and at this point, I think it's a little unclear whether or not he wants to represent himself, but I believe that was the case.  I think The Court – and I apologize for any added confusion.  I think The Court will have to inquire a little bit further on that, because it was difficult to get an exact meaning from Mr. Mathis.  And I'll certainly let Mr. Mathis speak to this.

I also, just for the purpose of the record, conveyed a message from his wife, who was concerned that he did not understand The Court's explanation that The Court would – could undertake and would be willing to undertake.  However, it's my understanding that Mr.

Mathis understood that, but wishes to have a – does not wish to waive his right to right to [sic] a jury.

THE COURT:  Let me ask counsel to approach for a moment.

> (Discussion held off the record and out of the hearing of
> the court reporter.)

> (Pause in the proceedings.)

THE COURT:  Never mind?

MR. HECHAVARRIA:  Okay.

THE COURT:  Okay.  That's – you're not making that offer to the state any longer, Mr. Mathis?

THE DEFENDANT:  I mean, my understanding, from what Mr. Martin just said to me – the idea I'm only going to be entitled to the time that I just served.  I mean, I just – I thought I EOS'd.  I've been here 10 months.  I've been in since last year.

THE COURT:  Well, the law says that if you're serving a sentence, and you escape – I don't know yet if you did.  But if you did – you escape while you're serving that sentence, and then you're arrested, you don't get credit for the time until that sentence you're serving is up.  And then you start getting credit.  So say you were in on a six-month sentence, and you escaped three months into it.  Then you have to serve the rest of the sentence before you start getting credit.

THE DEFENDANT:  I – I take my chances with – go to trial.

THE COURT:  Okay.

MR. HECHAVARRIA:  That's fine. . . .

(Ex. A7, pp. 173-174; 176-179).

At the November 30, 2011, pretrial conference and *Nelson* inquiry, the record

reflects:

> MR. MARTIN: Additionally, this is – Mr. Mathis, I think we discussed
> this earlier, the State had indicated that if you did not accept their last
> offer to resolve this case, that they will file an enhancement which will
> be – which is a violent career criminal. And, actually, I'm going to ask
> them to actually articulate this on the record. However, what ultimately
> that means would be that they would seek a mandatory minimum of 15
> years from the Court if you are convicted of this matter. And I've
> discussed that with you; correct?
>
> THE DEFENDANT: No, what I remember, Mr. Martin, is that you
> discussed it –
>
> MR. MARTIN: Well, hold on, hold on –
>
> THE DEFENDANT: – [indiscernible] –
>
> MR. MARTIN: No, no, I got – I'm putting this –
>
> THE COURT: Wait, wait, both, stop.
>
> THE DEFENDANT: Yeah, but –
>
> THE COURT: No, Mr. Mathis, wait.
>
> I'm going to ask the State to tell us exactly what it is the State
> intends to do if –
>
> MR. MARTIN: Okay.
>
> THE COURT: – Mr. Mathis doesn't take the offer or whatever it –

THE DEFENDANT:  Well, you don't have to because I'm not going to take it.

THE COURT:  Mr. Mathis, this is my courtroom.  If you want to stay in it, you will abide by my rules. . . .

MR. HECHAVARRIA:  Your Honor, if he does not accept the offer, he qualifies as a violent career criminal, and we will be filing that enhancement.  This crime does qualify for that enhancement, and that would require a 15-year minimum mandatory incarceration day-for-day for Mr. Mathis.

THE COURT:  Okay.  And what is the current offer to Mr. Mathis?

MR. HECHAVARRIA:  I have to look that up.  Excuse me for just a second.  Sixty-one months.

THE COURT:  So the offer currently is 61 months Department of Corrections.

MR. HECHAVARRIA:  Yes, ma'am.

THE COURT:  Okay.  All right.  So, Mr. Mathis, do you understand what the offer is to you?

THE DEFENDANT:  Judge, McDonald, I do understand what the State said.

THE COURT:  Okay.  And do you understand what they're intending to do if you do not take the offer?

THE DEFENDANT:  I understand what he just said.

THE COURT:  Okay.  That's my question.

(Ex. A7, pp. 199-200).

At the December 12, 2011, trial status conference and hearing on the State's motion *in limine* regarding petitioner's affirmative defense of necessity, after the State announced that its plea offer would no longer be available after that day, the record reflects:

> MR. HECHAVARRIA [Prosecutor]:  Well, . . . I had not filed up to today's date, because I expected the hearing to resolve this issue, the notice of violent career criminal to allow Mr. Mathis the opportunity to accept the five years rather than suffering the consequences of a 15-year day-for-day sentence.  And I have to file it, so, I mean, he's got to make a decision.
>
> I think the case law is clear.  I think he doesn't qualify for the necessity [d]efense with reference to this charge.  And after today that plea offer is no longer going to be available.
>
> . . . .
>
> MR. MARTIN [Defense Counsel]:  Okay.  Mr. Mathis, just to be clear, the State has made a last and, it sounds to me, a final plea offer to resolve this case for what your scoresheet calls for which is roughly five years in the Department of Corrections.  If you do not accept that plea, the State has announced that they will file an enhancement, what is known as violence [sic] career criminal, which is their belief that once that's filed, the State, excuse me, the Court, if you are found guilty, will have no choice but to sentence you to a mandatory-minimum of 15 years Department of Correction; do you understand that?
>
> THE DEFENDANT:  Yes.
>
> MR. MARTIN:  All right.  And we talked about this before; correct?

THE DEFENDANT:  Yes.

MR. MARTIN:  All right.  And what is your desire the, sir, as far as –

THE DEFENDANT:  I'm leaning for, for trial; I object to that.

. . . .

MR. HECHAVARRIA:   And I just – and I'll speak to the Court, because I don't think it's proper that I speak to the defense – defendant. He has to understand that this defense that he believes he's entitled to may not be available to him, and he should take that in consideration in considering the State's plea offer.  I'm just trying to be fair in the whole matter.  I've explained to Mr. Martin, after today I left it open so that I wouldn't have to – wouldn't have to do the 15 years until after this hearing.  But he has to understand that this defense that he thinks he's entitled to, the State honestly believes that the case law says he doesn't get it, and there's a possibility that he may not have it when he goes to trial.

And he's already admitted on the recorded [sic] in a recorded proceeding that he did escape.

THE COURT:  Mr. Mathis, you understand that, sir?

THE DEFENDANT:   Judge McDonald, yes, I understand, as far as what the State is saying.

THE COURT:  Okay.

THE DEFENDANT:  But you know, I mean the State –

THE COURT:  Mr. Mathis, you don't have to explain yourself, I just wanted to make sure that you understand that.

THE DEFENDANT:  Oh yeah, I just want to respond to the plea offer, I mean –

THE COURT:  Well, I think you have, I think you – so far, you've rejected it, unless you're changing your mind.

THE DEFENDANT:  Oh, no, no.

THE COURT:  Ok.  Then I think we're square.

THE DEFENDANT:  No doubt.  Can't just plea to DOC.

THE COURT:  Okay.  All right.

THE DEFENDANT:  I mean, I do want to end this, if it's possible, but, I mean, if the State was – I mean, offering me any county time, I've been given seven years.  I mean, it's no way I'm going to plead to go back to DOC.  I mean, I can't do that.

THE COURT:  It appears to me that that's not on the table; is that correct?

THE DEFENDANT:  Yes, ma'am.

MR. HECHAVARRIA:  No; county time is not on the table.

THE DEFENDANT:  We understand.

MR. HECHAVARRIA:  The choice is going to be either five years or take the chance he may be doing fifteen.

THE DEFENDANT:  Yeah, I'll take the chance.

(Ex. A10, pp. 340-44).

Petitioner's reply argues that the state court's rejection of Ground One involved an unreasonable determination of the facts because the transcript of the October 31, 2011, pretrial conference demonstrates that the court and prosecutor accepted petitioner's plea offer of 1-year county jail time.  (Doc. 33, pp. 9-11). Petitioner cites the off-the-record, untranscribed discussion and his remarks following that discussion concerning credit for time served in the county jail, and argues that the transcript as a whole establishes that "the state and the court is more than happy to accept the defendants (1) one year plea offer. . . ."  (Doc. 33, p. 10). The inference petitioner urges this court to draw is unreasonable because it is contrary to what the record as a whole (i.e., both before and after the remarks and off-record discussion) makes clear – the State never accepted and in fact consistently rejected petitioner's plea offer of 1-year county jail time.  (*See* Ex. A7, p. 177; Ex. A10, p. 344).

The record also establishes that both defense counsel and the State timely communicated the State's plea offer of 61-months state prison to petitioner, but petitioner consistently rejected the offer because he refused to agree to spend any time in state prison, and believed his escape was justified.  (*See* Ex. A7, pp. 199-200; Ex. A10, pp. 340- 44).  Petitioner has not met his burden of establishing that

the state court's rejection of Grounds One and Two was based on an unreasonable determination of the facts. The record suggests that petitioner has, for want of a better phrase, imagined the factual matters he advances in support of these grounds.

In light of the state court record, the First DCA reasonably could have concluded that petitioner failed to establish deficient performance and prejudice under *Strickland*, *Lafler* and *Frye*. Petitioner is not entitled to habeas relief on Ground One or Two.

Ground Three    "States prosecutor misled the court to believed [sic] that Mr. Mathis violated Fla. Statute 944.40 'Escape' in the manner it reads." (Doc. 13, p. 10 in ECF).

Petitioner claims the prosecutor "knowingly and intentionally misled the court" by charging and prosecuting petitioner for his escape from a "work release center" when "in fact, the record is very clear on its face according to the 'contract agreement' that Mathis was in a 'community release furlough program'." (Doc. 13, p. 10 in ECF). The "contract agreement" to which petitioner refers is the "Letter of Notice" from the Florida Department of Corrections (FDC) issued to petitioner upon his placement in an FDC community release program and corresponding transfer to a confinement facility for inmates in such programs (the Santa Fe Work Release Center). (Doc. 13, App. F). Petitioner asserts that the prosecutor's conduct was a

"violation of guaranteed Constitutional rights through the Giglio Rule."  (Doc. 33, p. 14).

Petitioner asserts that he presented this claim to the state court in his direct appeal and in his second Rule 3.850 proceeding.  (Doc. 13, pp. 10-11 in ECF).  Respondent asserts that petitioner presented these claims to the state court only in his second Rule 3.850 proceeding.  (Doc. 31, pp. 56-57).  Respondent argues that petitioner is not entitled to habeas relief, because he has not established that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law.  (Doc. 31, pp. 57-61).

Petitioner's Ground Three was not raised in the direct appeal.  (*See* Ex. G (petitioner's counseled direct appeal brief)).  Petitioner's Ground Three was twice presented to the state courts in postconviction proceedings.  Petitioner first raised the claim in his *pro se* state habeas petition filed on November 27, 2013, which was treated as a first Rule 3.850 motion.  (Ex. M1, pp. 6-17).  The Alachua County Circuit Court summarily denied the claim as follows:

> As to ground (A), Defendant alleges that the State committed a Giglio violation by misleading the court and the jury to believe that Defendant was incarcerated at "the Santa Fe Work Camp" when he actually was incarcerated at the "Santa Fe Work Release Center."  To establish a *Giglio* violation, the defendant must show that:  (1) the testimony given was false; (2) the prosecutor knew the testimony was

false; and (3) the statement was material. *Rodriguez v. State*, 39 So. 3d 275, 285 (Fla. 2010). Here, the evidence presented at trial established Defendant escaped from the Santa Fe Work Release Center. . . . Thus, neither the Information nor the testimony presented at trial was false. Accordingly, the claim raised is without merit.

As to ground (B), Defendant alleges that the State fraudulently charged Defendant with escape from "the Santa Fe Work Camp" when he actually was incarcerated at the "Santa Fe Work Release Center." This claim is conclusively refuted by the record.

(Ex. M5, pp. 2-3) (citations to amendments to information, trial transcript and jury instructions omitted). Petitioner did not appeal from that order.

Petitioner raised the issue again in his second Rule 3.850 proceeding, as Ground II of his amended Rule 3.850 motion. (Ex. T3, pp. 96-110). The Alachua County Circuit Court summarily denied the claim as follows:

[T]he claim raised is procedurally barred by collateral estoppel. Collateral estoppel precludes a defendant from rearguing in a successive motion the same issue argued in a prior motion. *State v. McBride*, 848 So.2d 287, 291 (Fla. 2003); *see also Jenkins v. State*, 749 So.2d 527, 528 (Fla. 1st DCA 1999). The instant claim has been raised, in a similar form, in a prior motion and denied on the merits. *See* Affidavit for Emergency Habeas Corpus to Exhaust Administrative Remedies (filed January 10, 2014); Order Denying Motion for Post-Conviction Relief (filed January 10, 2014). Thus, the instant claim is procedurally barred.

Even if the claim raised is not procedurally barred by collateral estoppel, it is without merit. Defendant alleges that the State committed a *Giglio* violation by misleading the court and the jury to believe that Defendant was incarcerated at "the Santa Fe Work Camp" when

actually he "was being housed within a community release or furlough program."  To establish a *Giglio* violation, the defendant must show that:  (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material.  *Rodriguez v. State*, 39 So. 3d 275, 285 (Fla. 2010).  Here, the evidence presented at trial established Defendant escaped from the Santa Fe Work Release Center.  See amended Information; Trial Transcript at 9 (lines 21-25) – 10 (lines 1-4), 13 (lines 11-12, 17-19), 20 (lines 19-25) – 21 (lines 1-12), 39 (lines 22-25) – 40 (lines 1-23), 49 (lines 13-23), 65 (lines 10-24), 73 (lines 14-25) – 74 (lines 1-15), 113 (lines 19-22), 129 (lines 1-16); Jury Instruction.  Thus, neither the Information nor the testimony presented at trial was false.  Accordingly, the claim raised is without merit.

This Court additionally notes that Defendant is essentially alleging that the evidence introduced at trial was insufficient to support his Escape conviction.  A defendant cannot challenge the sufficiency of the evidence underlying his conviction through a rule 3.850 motion, especially where there has been a direct appeal.  *Betts v. State*, 792 So. 2d 589, 590 (Fla. 1st DCA 2001); *see also Johnson v. State*, 593 So. 2d 206, 208 (Fla. 1992) ("[i]ssues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack").  Motions filed under rule 3.850 "cannot be utilized for a second appeal."  *Jones v. State*, 446 So. 2d 1059, 1061-62 (Fla. 1984).  Accordingly, the claim raised is without merit.

(Ex. T4, pp. 131-132).  The First DCA summarily affirmed.  (Ex. T8).

This court need not address whether petitioner's claim is procedurally defaulted (due to petitioner's failure to appeal from the state circuit court's January 10, 2014, order denying the claim (Ex. M5), and due to the state circuit court's November 26, 2014, procedural bar ruling based on collateral estoppel (Ex. T4)).

Respondent, while asserting that she does not waive an exhaustion defense, argues that even giving petitioner the benefit of the doubt and assuming without deciding that the state courts addressed petitioner's claim on the merits in the second Rule 3.850 proceeding, petitioner cannot prevail because the state court's denial of relief was neither contrary to, nor an unreasonable application of, clearly established federal law.  (Doc. 31, pp. 54-57).

A.    Clearly Established Federal Law

By referring to *Giglio*, petitioner is apparently referencing this statement made by the Supreme Court in *Giglio*:  "As long ago as *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S. Ct. 340, 342, 79 L. Ed. 791 (1935), this Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972).  To establish a *Giglio* violation, a petitioner must show "(1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material – i.e., that there is 'any reasonable likelihood' that the false testimony 'could . . . have affected the judgment.'"  *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006) (*quoting Giglio*, 405 U.S. at 154)).

B.    Review of State Court's Decision

Petitioner was charged and convicted of violating Fla. Stat. § 944.40 and §

945.091.  Section 944.40, provides:

>    Any prisoner confined in any prison, jail, private correctional
> facility, road camp, or other penal institution, whether operated by the
> state, a county, or a municipality, or operated under a contract with the
> state, a county, or a municipality, working upon the public roads, or
> being transported to or from a place of confinement who escapes or
> attempts to escape from such confinement commits a felony of the
> second degree, punishable as provided in s. 775.082, s. 775.083, or s.
> 775.084. The punishment of imprisonment imposed under this section
> shall run consecutive to any former sentence imposed upon any
> prisoner.

Fla. Stat. § 944.40.  Section 945.091 allows the Florida Department of Corrections

to extend the limits of a prisoner's confinement under prescribed conditions and for

prescribed periods of time to allow the prisoner to "work at paid employment,

participate in an education or a training program, or voluntarily serve a public or

nonprofit agency or faith-based service group in the community."   Fla. Stat. §

945.091(1)(b).  Section 945.091(4), provides:

>    The willful failure of an inmate to remain within the extended
> limits of his or her confinement or to return within the time prescribed
> to the place of confinement designated by the department shall be
> deemed as an escape from the custody of the department and shall be
> punishable as prescribed by law.

Fla. Stat. § 945.091(4). The prosecutor charged and presented evidence that petitioner escaped from the Santa Fe Work Release Center when he left the Santa Fe Work Release Center, without signing out or receiving permission to leave, after his employer had returned him to that facility. (Ex. A10, pp. 398-409 (amendment of information; Ex. A5, pp. 9-10, 13, 20-21, 39-40, 49, 65, 73-74, 113, 129 (trial transcript)).

Petitioner appears to believe that it was misleading for the prosecutor to not present evidence that he was participating in a community release program while confined at the Santa Fe Work Release Center. (Doc. 13, p. 10 in ECF; Doc. 33, pp. 14-18 ("The States prosecutor, knowingly and intentionally misled the trial court and jury during trial to believe that the defendant escaped from a "Work Release Center," while in fact, having full knowledge that he was being housed and participating in a "Community Release or Furlough Program.")). Petitioner relies on the "Letter of Notice" (referred to by petitioner as the "contract agreement") as evidence of the alleged fraud.

The "Letter of Notice" (hereinafter Notice) was signed by petitioner on November 20, 2009. (Doc. 13, App. F). The Notice identifies petitioner by name and inmate number, and identifies his place of confinement during his participation

in the community release program as: "Santa Fe Work Release Center".    The

substance of the "Letter of Notice" provides:

> This is to notify you that all rules of the department, including: Inmate Discipline, Chapter 33-601.301; Community Release Programs, Chapter 33-601.602; and Placement of Inmates into Community Release Programs, Chapter 33-601.606 apply to you as an inmate in the community release or furlough program.  This is to further notify you that you may be removed from the community release or furlough program for any reason that the department determines is in the best interest of the department, the public or yourself.
>
> This letter of notification supersedes any and all previous work release agreements.

(Doc. 13, App. F).    Immediately above petitioner's signature on the Notice is

petitioner's acknowledgement that:  "The above notice has been read and explained

to me, and I understand the conditions of my participation in the community release

or furlough program."  (Doc. 13, App. F).

The First DCA reasonably could have concluded that the fact that petitioner

was a participant in a community release program when he escaped from the Santa

Fe Work Release Center does not suggest that the prosecutor committed fraud, was

deceptive, or presented false testimony.  The term "Community Release Program"

is defined as:  "Any program that allows inmates to work at paid employment or a

center work assignment or to participate in education, training, substance abuse

treatment programs, or any other transitional program to facilitate re-entry into the community while in a community release center."   Fla. Admin. Code r. 33-601.602(1)(c).   One type of community release program is "Community Work Release", which is defined as:  "The portion of the community release program that allows inmates to work at paid employment in the community while continuing as inmates of the facility where they are confined."   Fla. Admin. Code r. 33-601.602(1)(d).   Petitioner continued as an inmate of the Santa Fe Work Release Center during his participation in the community release program.

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of clearly established federal law.  Petitioner is not entitled to federal habeas relief on Ground Three.

Ground Four          "Appellate counsel was constitutionally ineffective for not raising, 'the court committed reversible error by denying appellant the right to an [sic] Faretta hearing and self-representation.'"  (Doc. 13, p. 12 in ECF).

Petitioner's final claim alleges that at his December 29, 2010, first appearance and at a January 13, 2011, pre-trial proceeding, he stated his desire to represent himself, but the trial court denied his request in violation of his constitutional rights as recognized in *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d

562 (1975).[4]  Petitioner faults appellate counsel for failing to raise the issue on direct appeal.  (Doc. 13, p. 12 in ECF).  The parties agree that petitioner presented this claim to the state court in his petition for writ of habeas corpus alleging ineffective assistance of appellate counsel.  (Doc. 13, p. 12 in ECF; Doc. 31, p. 61; Doc. 31, Ex. S1).

A.    Clearly Established Federal Law

An ineffective assistance of appellate counsel claim is considered under the two-part test announced in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 756 (2000) (holding that *Strickland* is the proper standard for evaluating a claim that appellate counsel was ineffective); *see Smith v. Murray*, 477 U.S. 527, 535-36, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) (applying *Strickland* to claim of attorney error on appeal).  Petitioner must show (1) appellate counsel's performance was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's unreasonable performance, petitioner would have prevailed on his appeal.  *Smith*, 528 U.S. at 285-86.

---

[4] In *Faretta*, the United States Supreme Court held that "a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so."  422 U.S. at 807.

B.    Review of State Court's Decision

The First DCA denied petitioner's state habeas petition "on the merits", without explanation. *Mathis v. State*, 169 So. 3d 185 (Fla. 1st DCA 2015) (copy at Ex. S2). The First DCA's decision is considered an adjudication on the merits for purposes of § 2254. *Richter*, 562 U.S. at 99. To warrant federal habeas relief, petitioner must establish that no reasonable basis existed for the First DCA to deny his claim.

Petitioner alleged in his state habeas petition that had appellate counsel investigated the record, she would have found that "Petitioner waived his right to counsel the clearly sounding face of the record during first appearance proceeding on December 29, 2010 and again on January 13, 2011 in Judge McDonald's court proceeding and in each court proceeding, thereafter, the right to waive counsel claim would have been clear to [s]ee in the appellate counsel's eyes." (Ex. S1, p. 6). Looking to the trial court record, however, which is the record appellate counsel would have examined in an effort to discover nonfrivolous issues, petitioner's present claim he was denied his right of self-representation under *Faretta* was not so meritorious (or apparent) that in the exercise of reasonable professional judgment,

counsel could be deemed ineffective by not presenting this claim in addition to (or in place of) those which counsel deemed worthy.  (Ex. G).

As is apparent from examination of the record, petitioner's reluctance to being represented by appointed counsel was borne of his "sovereign citizen" outlook[5] which, in turn, played a role in his being represented by appointed counsel.  At his first appearance on December 29, 2010 (not transcribed), petitioner refused the appointment of counsel and none was then appointed.  (Ex. A1, pp. 8-9).  At a proceeding held on January 13, 2011, however, also not transcribed, an order was entered provisionally appointing counsel "at the request of the defendant".  (Ex. A1, p. 11; Ex. A13).  Petitioner refused to sign the written notice of case management proceedings scheduled for February 17, 2011. (Ex. A13).

In regard to the proceedings of January 13, 2011, petitioner filed a *pro se* "Notice of Appeal" in the First DCA dated February 18, 2011, stating:

> NOTICE IS GIVEN that I, Willie N. Mathis, a flesh and blood man, a living soul, appeals to this court the First District Court of Appeals, the order of McDonald - Judge in and for Alachua County to be reviewed rendered on January 13, 2011 during a [sic] open court

---

[5] *See e.g. United States v. Davis*, 586 F. App'x 534, 536-37 (11th Cir. 2014) ("Previously, we've noted that so-called 'sovereign citizens' are individuals who believe they are not subject to courts' jurisdiction and often deny being named defendants in actions to which they are parties, instead referring to themselves as third-party intervenors.  We've further said that courts repeatedly have been confronted with sovereign citizens' attempts to delay judicial proceedings, and summarily have rejected their legal theories as frivolous.") (citation omitted).

proceeding for the record, In accordance with Fla. App. P. 9.110 (d) and Fla. R. App. P. 9.130(c).    The nature of order is: Force Representation and Denial of Adversary Preliminary Hearing. Procedure Violation and Force contract by fraud to deny constitutional rights of due process.

(Ex. B1).  Petitioner then filed a *pro se* "Motion for Rule 60(b)(4)" in the First DCA,

which began:

> COMES NOW, the Petitioner, I Willie N. Mathis, a living soul, a flesh and blood man requests that this Court enter an order pursuant to Fed. R. 60(b)(4) for fraud, lack of subject matter jurisdiction.  As grounds therefor and in support of this Motion I, Willie N. Mathis would state the following:
>
> 1) Contract by fraud, extortion by conspiracy for criminal cover-ups'.
> 2) Denial of right to re-present self and property in court proceeding to assure profit through public defendants [sic] office.
> 3) Fraudulent claims filed against my property to falsely imprison me for profit.
> 4) Denial of due process rights to assure a conviction.

(Ex. B2).[6]

On March 2, 2011, petitioner filed a *pro se* demand for speedy trial in the state

circuit court which was stricken as a nullity due to petitioner being represented by

counsel.  (Ex. A1, pp. 60-62, 64-67).  The next indication in the record of petitioner's

desire for self-representation came on August 3, 2011, where, at the commencement

---

[6] The First DCA denied petitioner's Rule 60(b)(4) motion, noting:  "The Federal Rules of Procedure do not apply in Florida State Courts."  (Ex. B5).

*Case No. 1:15cv130/WTH/CJK*

of competency proceedings, the trial court announced after the jail deputy advised

that petitioner refused to come to court:

> THE COURT: Okay. Let's try to do it this way, I was thinking
> something different. He has told me he wants to represent himself; that
> is something he's told me before.
>
> I think for the record, the Court – Mr. Mathis had been evaluated
> by I want to say, or attempted to be evaluated by Dr. Levin. Actually
> Dr. Levin did evaluate him. He was not cooperative with Dr. Levin. I
> appointed Dr. Werner to evaluate him. He did cooperate with that
> evaluation. And given his desire, at least previously expressed desire
> to represent himself, I'm wondering if we can set something up later
> this afternoon in the video room.

(Ex. A11, pp. 511-12). The trial court instructed the jail deputy to tell petitioner that

"we're going to set up something this afternoon, late in the afternoon, and this

appearance could affect his future ability to represent himself[.]" (Ex. A11, p. 512).

When proceedings resumed later that afternoon, the jail deputy again advised the

trial court that petitioner refused to appear. (Ex. A11, pp. 513-515). Confirming

that the jail deputy talked with petitioner in the interim, the trial court inquired:

> THE COURT: And did you advise him about this three o'clock hearing
> since he refused to come this morning?
>
> OFFICER DUNCAN: Yes, Your Honor, I did.
>
> THE COURT: Did you advise him that it might have an effect on his
> ability to represent himself?

OFFICER DUNCAN: Yes, sir, that's the message I conveyed to him.

THE COURT: Okay. And what was Mr. Mathis' response to your communication?

OFFICER DUNCAN: Mr. Mathis stated to me that: You have no jurisdiction over me, I have sent my motion to a higher court, and I choose not to participate.

(Ex. A11, pp. 513-15).  The competency hearing proceeded without petitioner's

attendance.  (Ex. A11, pp. 515-20).

At proceedings the next day, August 4, 2011, petitioner again refused to

appear:

THE COURT: Officer Duncan, you spoke with Mr. Mathis about court today?

OFFICER DUNCAN: Yes, ma'am, I did.

THE COURT: And what did he tell you?

OFFICER DUNCAN: I explained to him what your office had relayed to us about the fact that he needed to appear or a motion would be filed to reappoint him the public defender, and his options to represent himself would be no longer available.  And he informed me that he had filed his motion with a higher court, and he chose not to participate in your court proceeding.

THE COURT: Okay. And that's been his stance all along, arguing that the Court had no jurisdiction over him, so –

OFFICER DUNCAN: Yeah, that he was basically saying the same thing he told me yesterday when I spoke to him for Judge Nilon.

THE COURT: Right, right. Well, thank you very much for conveying that.

So the Court, based on Mr. Mathis' decision not to come here today, even after having been advised that the Court would reappoint counsel, the Court reappoints counsel to represent Mr. Mathis. He can't very well represent himself if he's not going to come to court.

So, Mr. Martin, I assume that you will resume representation?

MR. MARTIN: Yes, ma'am.

THE COURT: Okay. So Madam Clerk, if we could just do an order appointing or – I guess maybe I need to draw up a special order. I'll draw up a special order. . . .

(Ex. A12, pp. 530-31). A written order reappointing the Public Defender was rendered August 11, 2011. (Ex. A2, p. 201). The record confirms that petitioner was initially allowed to represent himself; however, due to his refusal to appear in court, his right of self-representation was waived. *See Faretta*, 422 U.S. at 834 n.46 ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. . . . The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." (*citing Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970))).

On August 15, 2011, petitioner filed a *pro se* "Hold Harmless and Indemnity Agreement" in the trial court, (Ex. A2, pp. 202-11), and on September 9, 2011, he filed a *pro se* "Demand for Speedy Trial". (Ex. A2, pp. 212-13). The trial court struck these *pro se* pleadings due to petitioner being represented by counsel per its August 11, 2011, order. (Ex. A2, p. 221).

At a case management conference held September 28, 2011, petitioner appeared with counsel. There was no mention of self-representation. (Ex. A12, p. 535). A pre-trial conference was held October 26, 2011, at which petitioner was also present with counsel. There was no mention of self-representation. (Ex. A12, pp. 538-39).

At proceedings held October 31, 2011, at which petitioner was also present with counsel, an amended information was filed and petitioner was arraigned. (Ex. A7, pp. 168-69). Immediately after entering a plea of not guilty and confirming his readiness for trial, petitioner raised the issue of his representation by counsel:

> THE DEFENDANT: But I still have a – I still have a question about the fact that I haven't agreed to any contracts with Judge – Mr. Martin, you, or anyone here.
>
> THE COURT: And this is not a contractual situation.
>
> THE DEFENDANT: But I understand that. But Mr. Martin and I don't even talk.

MR. MARTIN: Yeah.  That – that's true.

THE DEFENDANT: So I mean, I don't understand.  How is it that he is – you feel comfortable enough that he's representing me when I never agree to that, and then him and I don't even talk.  He don't even – my strategies –

MR. MARTIN: Yeah.

THE COURT: Well, perhaps, Mr. Mathis, you should talk to Mr. Martin.  Because I know he will talk with you.

THE DEFENDANT: Yeah, but I haven't agreed to that contract with him or his office.

MR. MARTIN: Your Honor –

THE DEFENDANT:  Understand that.

THE COURT:  All right.

MR. MARTIN: Your Honor, I feel compelled to ask The Court to inquire whether or not Mr. Mathis would like to represent himself. I understand that The Court has went through this, but based on the circumstances that he just placed forth –

THE COURT: Uh-huh.

MR. MARTIN: – I would ask The Court to do that.

(Ex. A7, p.169-170). Discussion was had as to whether petitioner would prefer a

bench or jury trial, and petitioner expressed his desire to represent himself with Mr.

Martin as stand-by counsel.  (Ex. A7, pp. 170-76).  At this point the trial court announced:

> THE COURT: Mr. Mathis, hang on.  I'm going to go ahead and go through the rest of the docket.  It's clear to me that you want a trial.  I think the only question is whether you're going to handle your case, or you're going to allow Mr. Martin to handle your case.  So I'm going to come back to you in just a moment.

(Ex. A7, p.176).

Upon proceedings resuming, as set out and discussed in addressing Grounds One and Two, *supra*, petitioner, through counsel, made the plea offer of one-year county jail that was rejected by the State.  (Ex. A7, pp. 176-177).  Resuming discussion of self-representation, petitioner explained:

> THE DEFENDANT: I'd rather represent myself and ask Mr. Martin to be a standby lawyer.  Because he has made it clear to me that he do [sic] not believe I have the right to place my alleged accuser, victim on the stand.  So therefore, that's a conflict right there.  Because the Constitution state me – state that I have that right.

> THE COURT: And who is your alleged accused/victim, other than the State of Florida?

> THE DEFENDANT: Well, according to what Mr. – the State Attorney has stated in a sworn affidavit that the State of Florida is.  And I mean, if not, who else is?  I'm just asking for the victim to be placed on the stand.  Whomever I committed a crime against.

> THE COURT: So you want to call someone who represents the State of Florida?

THE DEFENDANT: I want to call the victim.  Not someone who represent.

THE COURT: Okay.

THE DEFENDANT: I mean, they alleging that I committed a crime, and I have to commit a crime against someone.  And I'm a flesh and blood man, standing here.  I'm not the Defendant.  I keep expressing that.   But I have the right to confront my victim according to the Constitution.

THE COURT: Mr. Mathis, if you want to represent yourself, I need to ask you some questions.

(Ex. A7, pp.180-81).  A *Faretta* inquiry ensued and, at its conclusion, the trial court ruled that petitioner would be allowed to represent himself if he so chose.  (Ex. A7, pp. 181-186).   However, upon petitioner's inquiry as to whether the Court would abide by the law and Constitution in trying his case and the Court's assurance that it would endeavor to do so, petitioner announced that he would prefer to have a bench trial "and I'll allow Mr. Martin to represent that."  (Ex. A7, pp. 187-189).  The trial court confirmed:

THE COURT: All right.  So am I understanding that you now wish Mr. Martin to represent you, and that you want a nonjury trial?

THE DEFENDANT: Yes, ma'am.

(Ex. A7, p.189). The State waived its right to a jury trial; the trial court again confirmed petitioner's waiver; and trial remained on the docket to commence the upcoming Thursday, November 3, 2011. (Ex. A7, pp. 190-95).

At proceedings held November 3, 2011, petitioner complained that depositions were incomplete. Defense counsel explained that a continuance was needed to complete depositions, but that petitioner did not want a continuance. (Ex. A8, pp. 224-31). Nevertheless, when the trial judge stated that she would continue the case to allow depositions to be completed, petitioner agreed and the case was continued over the State's objection. (Ex. A8, pp. 233-34). Setting the case for a pre-trial conference to be held November 30, 2011, for trial in December, petitioner told the court that he was uncomfortable with Mr. Martin as his counsel and felt that he was "conspiring with the State to take [his] life." (Ex. A8, p. 136). The trial court advised petitioner that if he still had concerns about Mr. Martin: "[Y]ou're always welcome to file a request that I take a look at whether or not he's representing you adequately, at which point we would have a *Nelson* inquiry." (Ex. A8, pp. 236-37).

On November 22, 2011, petitioner filed a *pro se* "Motion for Nelson Inquiry". (Ex. A2, pp. 268-70). At the commencement of proceedings on November 30, 2011, as set out and discussed in addressing Grounds One and Two, *supra*, the State's plea

offer was again discussed and petitioner stated that he would not accept it. (Ex. A7, pp. 198-200). Turning to petitioner's complaint of counsel, a *Nelson* inquiry was conducted and the trial court denied petitioner's request to remove Mr. Martin as counsel. (Ex. A7, pp. 201-07). Thereafter, petitioner continued to complain about Mr. Martin. (Ex. A7, pp. 207-14).

On December 1, 2011, with defense counsel present, petitioner was brought into court to be fingerprinted for the purpose of the State verifying his record of prior convictions. Petitioner made no mention of self-representation. (Ex. A8, pp. 242-45).

On December 12, 2011, a hearing was held on the State's motion *in limine* which sought to exclude evidence on petitioner's proposed affirmative defense of necessity. (Ex. A10, pp. 319-45). As set out and discussed in addressing Grounds One and Two, *supra*, at this proceeding the State's plea offer was again discussed and petitioner stated he would not accept it. (Ex. A10, pp. 341-44). During this proceeding, petitioner made no complaint of counsel and did not mention self-representation. (Ex. A10, pp. 319-46). That same day, however, petitioner filed a *pro se* "Motion to Dismiss for Deprivation of Rights to Due Process" in which he complained of Mr. Martin's representation. (Ex. A2, pp. 289-93). Not mentioned

at the court proceeding, this *pro se* motion was stricken as a nullity due to petitioner's representation by counsel by order rendered December 22, 2011.  (Ex. A2, p. 303).

At a proceeding held December 14, 2011, defense counsel announced that he was ready for trial with defense witnesses subpoenaed.  Over the State's objection, the trial court ruled that one of the defense witnesses would be permitted to testify telephonically.   (Ex. A9, pp. 269-74).   The court conducted an evidentiary proceeding on the State's motion *in limine* regarding the affirmative defense of necessity.  Petitioner testified.  Upon conclusion, the trial court denied the State's motion, ruling that it would permit the necessity defense to be presented at trial scheduled for the following week.   (Ex. A9, pp. 274-312).   During these proceedings, petitioner made no complaint of counsel, nor did he mention self-representation.  (Ex. A9, pp. 269-312).

At proceedings held January 11, 2012, the State renewed its motion *in limine* regarding petitioner's affirmative defense of necessity based on new information that petitioner did not turn himself in to authorities at the first opportunity.  (Ex. A9, pp. 254-56).  Discussions were had of witness preparations for trial to be held in February.  (Ex. A9, pp. 256-66).  During these proceedings, petitioner made no complaint of counsel, nor did he mention self-representation.  (Ex. A9, pp. 254-66).

On January 19, 2012, evidentiary proceedings were held on the State's *ore tenus* motion to rehear the denial of its motion *in limine* seeking exclusion of petitioner's affirmative defense of necessity. (Ex. A4, pp. 410-50). At its conclusion, the trial court took the State's motion under advisement. (Ex. A4, pp. 448-50). During these proceedings, petitioner made no complaint of counsel, nor did he mention self-representation. (Ex. A4, pp. 410-50). By order rendered January 20, 2012, the trial court granted the State's motion *in limine* on rehearing, barring petitioner's presentation of the defense of necessity at trial. (Ex. A2, pp. 317-18).

Jury trial proceedings commenced on February 3, 2012, at which petitioner was represented by counsel, Mr. Martin. (Ex. A10, pp. 348-500). The only mention of self-representation during these proceedings came prior to the jury being sworn wherein Mr. Martin advised the Court:

> MR. MARTIN: Your Honor, at counsel table Mr. Mathis informed me, I think he expressed a desire in the past to cross-examine his accuser. I informed him that the only way he could reasonably conduct his defense in that fashion would be if he represented himself. My colleagues are talking to him. When I go back I'll see if he wants that addressed or not.

(Ex. A10, p. 360). No further mention of self-representation was made. (Ex. A10, pp. 360-500). Following the close of the State's case-in-chief, the trial court granted defense counsel's motion for mistrial. (Ex. A2, p. 325; Ex. A10, pp. 449-64).

A trial status conference was held February 15, 2012, at which defense counsel discussed the possibility of a plea and requested that the case be left on the trial docket. (Ex. A9, pp. 315-16). During these proceedings, petitioner made no complaint of counsel, nor did he mention self-representation. (Ex. A9, pp. 315-16).

Jury selection for re-trial was held February 20, 2012. (Ex. A4, pp. 452-560). During these proceedings, petitioner made no complaint of counsel, nor was self-representation mentioned. (Ex. A4, pp. 452-560). Instead, when asked by the Court if he was satisfied with Mr. Martin, petitioner responded: "Oh, yeah. Well, Mr. Martin is doing his job." (Ex. A4, p. 554).

Jury trial proceedings commenced on February 24, 2012, at which petitioner was again represented by counsel, Mr. Martin. (Ex. A5). During these proceedings, petitioner made no complaint of counsel, nor was self-representation mentioned. (Ex. A5). The trial resulted in petitioner's conviction. Appellate counsel filed an initial brief in the First DCA presenting two issues for review:

> I. THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION TO EXCLUDE EVIDENCE REGARDING APPELLANT'S NECESSITY DEFENSE AND IN FAILING TO INSTRUCT THE JURY ON NECESSITY AS A DEFENSE TO THE CHARGE OF ESCAPE.
>
> II. THE TRIAL COURT ERRED IN ADMITTING THE CRIME AND TIME PACKET INTO EVIDENCE OVER DEFENSE OBJECTION.

(Ex. G).

In reviewing the reasonableness of appellate counsel's performance on direct appeal, this court is mindful of the Supreme Court's discussion in *Smith v. Robbins*, where the Court advised:

> In *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983), we held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.   Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent.   *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

*Id*., 528 U.S. at 288.  As also observed in *Smith v. Murray*, 477 U.S. 527, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986): "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id*., 477 U.S. at 535-536 (*quoting Jones v. Barnes,* 463 U.S. at 751-52).   In *Jones*, the Supreme Court specifically recognized that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  *Id*. at 751-

52.  The *Jones* Court also recognized, particularly in light of time limitations at oral argument and page limitations on briefs, "[a] brief that raises every colorable issue runs the risk of burying good arguments – those that . . . 'go for the jugular' . . . – in a verbal mound made up of strong and weak contentions." *Id*., 463 U.S. at 753.  "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy.  . . . Nothing in the Constitution or our interpretation of that document requires such a standard." *Id*., 463 U.S. at 754.

From the above course of proceedings, it would not have been unreasonable for the First DCA to conclude that appellate counsel reasonably could have determined that petitioner's claim he was denied the right of self-representation under *Faretta* would have little to no likelihood of success.  The trial record establishes that while petitioner at some point had been allowed to represent himself, he forfeited that opportunity when he refused to attend court on August 4, 2011.  (Ex. A2, p. 201; A11, pp. 51-515; A12, pp. 530-31).  Thereafter, at proceedings held October 31, 2011, the trial court conducted a full *Faretta* inquiry upon petitioner's expression of his desire to again represent himself; yet, after the court stated that it

would allow him to do so, petitioner withdrew his request, stating that he would prefer to have a bench trial with Mr. Martin representing him. (Ex. A7, pp. 181-89). Although petitioner sought to discharge Mr. Martin as his counsel through the *Nelson* hearing on November 30, 2011, (Ex. A2, pp. 268-70; A7, pp. 201-14), petitioner did not voice a desire for self-representation then or at any time thereafter through to his second trial and conviction.

Appellate counsel also reasonably could have determined that the presentation of a *Faretta* claim of little to no merit would detract from the central issue counsel did raise – whether the trial court was correct in disallowing petitioner's affirmative defense of necessity – which went to the core of petitioner's case. *See Smith v. Robbins; Smith v. Murray; Strickland; Jones, supra.* Especially in light of the "double deferential judicial review ... [that] applies to a *Strickland* claim evaluated under the s. 2254(d)(1) standard," *Knowles, supra*, petitioner cannot "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Petitioner is not entitled to federal habeas relief on Ground Four.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774, 197 L. Ed. 2d 1 (2017) (*quoting Miller-El*, 537 U.S. at 327). The petitioner here cannot make that showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 13), challenging petitioner's judgment of conviction and sentence in *State of Florida v. Willie Norman Mathis*, Alachua County Circuit Court Case No. 10-CF-3408, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 19th day of June, 2017.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.